UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CRIMINAL No. 12-507-03 |
| | : | |
| SINOUN YAV | : | |
| *Defendant* | : | |
| _____ | : | |

## DEFENDANT SINOUN YAV'S SENTENCING MEMORANDUM

Defendant Sinoun Yav, by his attorney, Peter J. Scuderi, respectfully submits this sentencing memorandum.

**PRELIMINARY STATEMENT**

Defendants Sinoun Yav, with Victor Thach and Kimly Chum, were indicted for conspiracy to defraud the United States and failure to file tax returns. The essence of the charges stem from Victor Thach's ownership of a labor leasing company. The business was jointly operated by Thach and his girlfriend, Kimly Cum. The company provided temporary employees to mail sorting facilities owned by the PSI Group Inc., a subsidiary of Pitney Bowes. PSI paid the workers gross salary to Thach's company who was responsible for paying the employees and withholding and paying the appropriate taxes. Rather than paying the taxes or submitting any forms, the checks were cashed and Thach and Chum paid the workers their salaries in cash and kept the money that was earmarked for taxes. As stated in paragraph two of the Indictment:

Both THACH and CHUM were responsible for hiring, firing and paying the

employees.  Both defendants THACH and CHUM exercised significant control over the Employment Staffing Agency's finances, including the ability to withdraw large amounts of cash used to fund the cash payroll.  Defendant CHUM was responsible for maintaining payroll records and instructed defendant Sinoun Yav which employees to transport daily to and from the PSI facilities.

As stated earlier, Defendants Thach and Chum kept the portion of the cashed checks attributed to payments which should have been made for the taxes.  In this regard, paragraph sixteen of the Indictment provides:

> Defendants VICTOR THACH and KIMLY CHUM failed to withhold federal income taxes and social security and medicare taxes from their "under the table" wages, causing a total tax loss of at least $1,049,763.

## THE PLEA AGREEMENT

In Yav's plea agreement, the parties stipulated that the tax loss was "not greater than $97,278.50", that defendant had accepted responsibility, and that the tax owed by defendant on the unfiled returns is $6,619.00.  The parties agreed to disagree that defendant was entitled to a reduction for role in the offense 3B1.2.

## THE PRE-SENTENCE REPORT

The pre-sentence investigator concluded that  pursuant to U.S.S.G. §§ 2T1.4(a)(1)and 2T4.1, the base offense level is 16 because the tax loss was between $80,000 and $200,000, that defendant accepted responsibility, and notably that defendant was a minor participant.  With the deductions for acceptance and minor role, defendant's

total offense level is twelve which is in Zone C with a guideline range of 10-16 months.

Since the time of the plea, the government and defendant have agreed that the loss attributed to the defendant is $84, 249.00.  This was done because there was some uncertainty about whether all of the checks cashed by Yav were used by Thach for payroll. The defendant did not know about the use of all of the funds.  However, he did not know that one check in the amount of $1500 was used for the repair of his car which was used to transport the workers.

Significantly, the checks used for the adjusted calculation were dated in two one-week periods, in October of 2008 and March of 2009, when it is believed that co-defendant Thach was out of the country on vacation, and Yav cashed checks and distributed payroll.   The checks cashed in this two-week time period account for %86 of the checks cashed by Yav which may corroborate Yav's uncertain recollection as to when and why he cashed the other checks. This revised number does not affect his guidelines as the low end of the range is $80,000.00.  However, it does affect the extent of his involvement. It should also be noted that the government was more than reasonable in agreeing to the revised number as defendant had no evidence to the contrary.

**YAV WAS A MINIMAL PARTICIPANT**

Defendant has submitted no factual objections to the pre-sentence report.  The pre-sentence investigator has concluded that defendant was a minor participant.  Defendant contends that Yav was a minimal participant.  Clearly the analysis is fact based and defendant relies on the facts thoroughly presented by the pre-sentence investigator in

paragraph 26 and the analysis here.  The facts are compelling.

Based on the tax loss attributed to Thach and Chum of over one million dollars, it appears that they pocketed approximately 3.4 million dollars from the scheme. If counsel is incorrect on the reverse tax owed analysis, Thach and Chumly pocketed at least one million dollars from the scheme.  As stipulated by the government, Yav was paid approximately $500 or $600 per week for work that he actually performed.  Yav is not denying the offense conduct.  But, the pattern of his check cashing activity shows temporally how minimal his role was compared to the other defendants.

The pre-sentence investigator has concluded that Yav is not entitled to the minimal status because of his knowledge of the scheme.  Defendant was fully aware of the scheme.  However, that does not preclude him from receiving a minimal role reduction.

Even though Yav's relevant conduct under §1B1.3 was limited to the conduct in which he was personally involved, he is still eligible for this deduction under Application Note 3(A) which states: "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.  A defendant who is accountable under §1B1.3(relevant conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline."

Further, application note 4 provides:

**Minimal Participant**.- Subsection(a) applies to a defendant described in

Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

While the application note is instructive about knowledge, it does not preclude a reduction under this section. It simply says that knowledge is "indicative".   Further, a reduction under this section is not precluded if the only other co-defendants are determined to be leaders and there are no average participants.

In <u>United States v. Tsai</u>, 954 F.2d 155(3rd Cir 1991), the Court comprehensively discussed the factors and law  utilized in analyzing upward and downward adjustments for roles in the offense. The Court concluded that the two concepts are not mutually exclusive:

> Defendant contends, however, that the district court erred in not offsetting these points with a corresponding two-point reduction under USSCG § 3B1.2(b), because defendant also qualified as a "minor participant" in the offense.  Defendant submits that on facts like those present here, aggravating and mitigating roles in the offense, as defined by the Guidelines, can coexist, and that where they do, they should be deemed to cancel each other out. The government disagrees and asserts a "logical inconsistency."
> Defendant submits that the evidence shows that his brother, Tommy Tsai, was the scheme's leader and that, whenever his brother was present, defendant deferred to his authority.  In essence, defendant contends that his role was to carry out instructions that he received by fax from Taiwan, even when he acted alone. While not denying that he was more culpable than Rosen, defendant asserts that he was less culpable than his brother and the officials of the Chung Shan Institute of Science and Technology who sought to acquire United States military technology.
> The Guidelines define a "minor participant" as one who is "less culpable than most other participants, but whose role could not be described as minimal." USSCG § 3B1.1, note 3.  According to the application note, the

> "participants" that must be considered in this comparison include all those who were "criminally responsible for the commission of the offense, but ... not ... convicted." Id. at note 1.15
> **The district court apparently assumed that because it had (properly) found that there could be an upward adjustment for role in the offense, there could be no downward adjustment for less than average culpability.16 This assumption is incorrect. Nothing in the Guidelines or in the enabling legislation, the Sentencing Reform Act, 18 USC §§ 3551 to 3585 (1988), compels that conclusion.**

Id. at 166-167. (Emphasis added.)  Accord, United States v. Atlantic States Cast Iron Company, 627 F.Supp.2d.189 (D.C.N.J 2009).

The Tsai Opinion is simply a logical extension of the purpose of 3B1.2.  Rather than being concerned about labels attributed to participants, the guideline is meant to allow for differences for roles in the offense which are not based mathematical principles.  And Amendment 755 to the guidelines recognized that the inclusion of language about the infrequent use of the minimal participant adjustment and the preclusion of awarding the adjustment based upon the bare assertion of the defendant was out of concern that the language "may have the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances."

It is difficult to imagine a scenario in which the difference in culpability is much greater.  Even though Yav knew of the scheme, he was simply a underpaid and infrequently used loyal lackey who was only really needed when his brother and his girlfriend were on vacation.

**ADDITIONAL REASONS FOR A LOWER SENTENCE**

Whether identified as a departure or variance, there are factors which should be

considered as part of the §3553 analysis that would entitle defendant to a sentence below the guidelines. The case law on this subject is extensive but basically provides the Court with common sense discretion to impose an appropriate sentence.

In the pre-sentence report, there are numerous factors warranting a variance from the Guidelines. Defendant was born in Cambodia and was raised in the Killing Fields. His father and most of his family were executed. He was taken from his mother and spent his youth in a labor camp. Many people died from starvation or exhaustion. After he and his brother escaped, he lived in a refugee camp. Defendant is now married and has a child. He and his wife work different work shifts to alternate care for their child.

CONCLUSION

<u>Booker</u> and all of the recent cases reaffirm the "parsimony provision" which provides that in considering all of the §3553(a) factors, the judge must "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing. That provision directs the sentencing judge to consider: (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, ( c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

It is unlikely that defendant will be a threat to anyone or is in need of rehabilitation. There is no suggestion that he will ever work in that type of business again. It is unlikely

that he will ever again be in trouble.    He is happy that he has a job and a wife and a child.  Ironically, he is not afraid to go to prison even though it would work a hardship on his wife and child.  And that is because Yav is U.S. citizen, and he is happy just to be in America, which on a bad day, or in prison, is far better that the environment in which he lived.

In <u>United States v. Pitts</u>, 2008 WL 191812 (3d Cir. 2008) the Third Circuit opined that "[a]lthough our post-Booker precedent makes it clear that the Guidelines are not to be taken lightly, a district court can properly deviate from the prescribed range even in the absence of extraordinary circumstances.  <u>Gall v. United States</u>, 128 S.Ct. 586, 594-95, (2007); <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

For the foregoing reasons, it is respectfully requested that the Court sentence defendant to a term of probation.

                                                Respectfully submitted,

                                                <u>s/Peter J. Scuderi</u>
                                                Peter J. Scuderi, Esq.
                                                2000 Market Street
                                                Suite 2925
                                                Philadelphia, PA 19103
                                                (215) 546-5650
                                                (215) 988-1842

                                                Attorney for Defendant
                                                Sinoun Yav

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing motion has been filed and served electronically this 4th day of October, 2013.

s/Peter J. Scuderi
Peter J. Scuderi, Esq.
2000 Market Street
Suite 2925
Philadelphia, PA 19103
(215) 546-5650
(215) 988-1842

Attorney for Defendant
Sinoun Yav
